# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MONA L. EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-01055 |
| ) | Judge Aleta A. Trauger |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Mona Evans brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act.

On June 8, 2018, the magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 21), recommending that the decision of the Social Security Administration ("SSA") be affirmed and that the plaintiff's Motion for Judgment on the Pleadings and Administrative Record (Doc. No. 18) be denied. The plaintiff has filed timely Objections (Doc. No. 22), to which the SSA has responded (Doc. No. 23). For the reasons discussed herein, the court will overrule the Objections, accept and adopt the R&R, deny the plaintiff's Motion for Judgment, and affirm the SSA's decision.

## I. Procedural History

Plaintiff Mona Evans filed applications for DIB and SSI on December 2, 2013, alleging disability beginning on November 1, 2013 due to neck and back pain, degenerative disc disease,

arthritis, bone spurs, bulging disc in lower back, bipolar disorder, depression, and anxiety. (Administrative Record ("AR") 93, 94, 186, 188, 208,[1] Doc. No. 16.)[2] These applications were denied initially (AR 93–94) and on reconsideration (AR 95–126). After a hearing on January 15, 2016, ALJ Angele Pietrangelo issued an unfavorable decision on March 31, 2016. (AR 11–26.)

The ALJ accepted as a factual matter that Evans suffered from severe impairments, including "left shoulder [sic]; degenerative disc disease of the lumbar spine; depression; generalized anxiety disorder; and obesity," but also found that these impairments did not meet or equal the severity of a listed physical impairment. (AR 17.) The ALJ also determined that the plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 or 12.06. He found that the plaintiff has mild restriction in activities of daily living; mild difficulties in social functioning; moderate difficulties with regard to concentration, persistence, and pace; and had never experienced any episodes of decompensation. (AR 18.)

The ALJ found that Evans had the residual functional capacity ("RFC") to perform light work with some limitations and, more specifically, that she had the ability to lift and carry twenty pounds occasionally and up to ten pounds frequently, to sit for six out of eight working hours and stand or walk for four hours in an eight-hour workday, and would need to have the option to sit or stand every thirty minutes. She should never climb ladders, ropes, or scaffolds but can occasionally engage in all other postural activities. She is limited to frequent overhead reaching with both upper extremities and should avoid concentrated exposure to unprotected

---

[1] Page number references to the administrative record are consistent with the Bates stamp number at the lower right corner of each page.

[2] The applications in the AR are dated January 21 and 22, 2014, but the Disability Determinations state that the original filing date is December 2, 2013. (AR 93, 94, 186, 188.)

heights and unguarded moving machine parts. (AR 19.)

The ALJ found that the plaintiff has past relevant work as a dental assistant and in customer service but is unable to perform any of her past relevant work. Nonetheless, based on the RFC and the testimony of a qualified vocational expert ("VE") at the hearing, the ALJ ultimately concluded that Evans is able to perform other work that exists in the national economy, including the jobs of light assembler, cashier II, and pricing tagger. (AR 26.) The ALJ therefore concluded that the plaintiff is not disabled.

The Appeals Council denied review on May 17, 2017 (AR 1–4), making the ALJ's decision the final Agency decision.

The plaintiff filed her Complaint initiating this action on July 19, 2017. (Doc. No. 1.) The SSA filed a timely Answer (Doc. No. 15), denying liability, and a complete copy of the Administrative Record (Doc. No. 16) ("AR"). On October 27, 2017, the plaintiff filed her Motion for Judgment on the Pleadings and Administrative Record and supporting Memorandum of Law. (Doc. Nos. 15, 15-1.) The SSA filed a Response (Doc. No. 19), and the plaintiff filed a Reply (Doc. No. 20). On June 8, 2018, the magistrate judge issued his R&R (Doc. No. 20), recommending that the plaintiff's motion be denied and that the SSA's decision be affirmed.

Now before the court are the plaintiff's Objections to the R&R. (Doc. No. 21.) The SSA has filed a Response in opposition to the Objections. (Doc. No. 22.)

## II. Standard of Review

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of*

*Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In Social Security cases under Title II or Title XIV, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such, entitled to benefits. 42 U.S.C. §§ 1383(c), 405(h). The court's review of the decision of an administrative law judge ("ALJ") is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see* 42 U.S.C. § 405 (g) (2012) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted). "The substantial evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "Therefore, if substantial evidence supports an ALJ's decision, the court defers to that finding, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### III.     The Plaintiff's Objections

The plaintiff poses a single objection to the R&R: that the magistrate judge erred in concluding that the ALJ provided sufficient reasoning and explanation for his rejection of treating physician Dr. Alacia Bigham's opinion regarding the plaintiff's work-related abilities.

## IV. Analysis

### A. *The Regulatory Requirements*

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)). Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, a treating-source opinion must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ finds, based on these criteria, that a treating-source opinion is not entitled to controlling weight, then the ALJ must weigh the opinion based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)–(6). Even if the treating physician's opinion is not given controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)).

If the treating source's opinion is not given controlling weight, the ALJ must give "good reasons" for discounting the amount of weight given. 20 C.F.R. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," the Sixth Circuit has repeatedly held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given the opinions "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).[3]

### B. The ALJ's Rejection of the Treating Physician's Opinion

Alacia Bigham is indisputably a "treating source," as she appears to have begun treating plaintiff, primarily for mental health issues, in February 2014, and she continued seeing her regularly through the end of 2015. (AR 654–99, 895–1012.) At the same time, the plaintiff was receiving treatment for chronic pain from The Pain Management Group. (*See* AR 510–653, 707–47, 763–888.) Although Dr. Bigham did not treat the plaintiff for pain-related issues, and her

---

[3] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). The altered regulations went into effect on March 27, 2017, and specifically apply only to the evaluation of opinion evidence for claims filed before March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/ bluebook/revisions-rules.html. They therefore do not apply in this case.

records do not reflect that she ever conducted a comprehensive physical examination,[4] Dr. Bigham completed a medical source statement relating to the plaintiff's physical abilities on May 29, 2014. In this statement, Dr. Bigham indicated that the plaintiff exhibited "Neuro-anatomic distribution of pain," "Limitation of motion of the spine," "Motor loss," and "Need to change position more than once every two hours." (AR 504.) She opined that the plaintiff suffered from severe pain, could sit for no longer than fifteen minutes at a time, work no more than one hour per day, could not lift any weight, whether occasionally or frequently, could occasionally bend, and could never stoop. (*Id.*)

In reaching his conclusion that the plaintiff had the RFC to perform a limited range of light work, the ALJ accorded little weight to Dr. Bigham's opinion but substantial weight to the opinions of two state agency consultants, Dr. George L. Cross and Dr. Celia Gulbenk. (AR 24.) In assessing the evidence in the record that led him to reject Dr. Bigham's opinion, the ALJ summarized the plaintiff's testimony and then reviewed the medical records, as follows:

> [The claimant] gets her mental health treatment through Alacia Bigham's office. She sees her every other week. Despite notes in the record, the claimant said that she had never taken too much [pain] medication and that she was never told to seek substance abuse treatment. The undersigned pointed out behavioral notes, which state that the claimant is trying to decide about going to substance abuse treatment. The claimant stated that it was because she mentioned suicide that day and that she has never had treatment for substance abuse or considered going for substance abuse treatment.
>
> After careful consideration of the evidence, the undersigned finds that the

---

[4] Dr. Bigham's notes regarding a physical examination frequently reference only the plaintiff's blood pressure, pulse rate, blood oxygen saturation level, height and weight (*see, e.g.*, AR 656, 699, 899), or, more typically, they document "abnormal" findings in the musculoskeletal area but without providing any detail. (*See, e.g.*, AR 659, 662, 665, 672, 764, 909, 912, 916 ("Musculoskeletal: Gait & Station Normal, . . . Inspection/Palpations/Motion Stability/Strength (specify joint) Abnormal.").) On other occasions, the notes contain no reference at all to a physical examination (*see, e.g.*, AR 896, 902, 905), or they indicate no abnormal musculoskeletal findings (*see, e.g.*, AR 935, 939, 943, ("Musculoskeletal: Gait & Station Normal.").)

claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision.

The treatment records fully document that the claimant has a history of overuse of pain medication, and that she was discharged from her pain clinic (Exhibit 1F, pg. 41). She reported that she was in the process of trying to determine whether she is in need of substance abuse treatment and that she was recommended to attend substance abuse treatment due to her use of pain meds (Exhibit 2F, pg. 123). The claimant denied all of this at the hearing but her records are clear, as she herself reported to Summit Primary Care that she had been discharged from the pain medication clinic, she did not feel her pain medications were working anymore, and that she was taking more pain medications than prescribed (Exhibit 1 F, pg. 41).

In April of 2012, the claimant went to Summit Primary Care for a follow-up visit. She reported that Cymbalta was helpful, and that she was taking clonazepam at night. She reported that she would be losing her job because she had been making many mistakes. She had weaned off Lortab and tried not to take it during the week because she thought the Lortab caused her errors at work. However, she said that the pain pills are the only thing that made her feel good. When on them, she could get out and do things (Exhibit 1F, pg. 12). In June of 2013, she also reported that the pain medications helped and that she was able to be more active (Exhibit 7F, pg. 110). In July of 2013, she reported to the pain management group that her pain medications were working well for pain relief and improvement of daily functions. They reviewed her medical records from the previous pain clinic and stated that the claimant was discharged due to non-compliance with medication and it was not in urine. She was put on a zero-tolerance plan. [Exhibit 7F, pg. 121.)] She reported that she was going to physical therapy and they did TPIs (dry needle therapy) and that she had a 20% increase in her range of motion from therapy. The 2015 treatment notes from Dr. Alacia Bigham were generally consistent and the claimant received medications for anxiety, attention, depression, arthritis, and sleep (Exhibit 14F).

In regards to her mental health, the claimant was treated at Volunteer Behavioral for depression and mania. However she cancelled many appointments in 2012 and 2013, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal (Exhibit 2F, pgs. 112–118). In 2014, the claimant went to Alecia Bingham [sic] M.D. and received counseling (Exhibit 8F, pg. 12). In April of 2014, the claimant requested that the doctor provide her a note that stated she could only work 29 hours a week.[5] Dr. Bigham provided the note (Exhibit 8F, pg. 34). In July of 2014, an objective exam

---

[5] The reference to 29 hours in the ALJ's decision appears to be a typographical error. The treatment note actually says 20 hours per week. (AR 687.)

revealed normal gait and station, normal memory, normal insight and judgment and orientation (Exhibit 8F, pg. 15).

The claimant is able to manage her household and help her elderly father with chores. On August 4, 2014, she reported that her pain medication relieved her pain and allowed her to do household chores, work part time, and gave her no side effects (Exhibit 7F, pg. 4). In Aug. 2014, Dr. Schooley reported that [an MRI] showed "no severe degenerative disc disease" (Exhibit 10F, pg. 3). But a [CT scan] of the lumbar spine showed disc derangement at L3-4, L4-5, and L5-S1 with multilevel foraminal stenosis and no central canal stenosis (Exhibit 10F, pg. 9). However, at the consultative examination, she had slow but normal range of motion in her neck; no tenderness or spasms in her lumbar spine, slow position changes, normal reflexes but slow gait and gait maneuvers without assistance. She also had knee crepitus but normal flexion and extension (Exhibit 4F). She did have reduced left leg strength. . . . By October 2014, her gait and station were normal, she had a negative straight leg test on both legs, and full strength in both legs (Exhibit 10F, pg. 1). The undersigned finds that the medical evidence above supports the finding that the claimant needs a sit-stand option and other limits, so that she is able to do limited light work.

. . .

As for the opinion evidence, I give little weight to the opinion of Dr. Bigham. Specifically, Dr. Bigham opines that the claimant cannot lift anything and can only sit or stand 15 min at a time (Exhibit 5F). However, the objective medical evidence does not support this. It also does not support the opinion that the claimant is limited to only one hour of work per day. Additionally, the claimant is able to do household chores, cook meals, groom herself, do dishes, assist her 77-year-old father, carry light bags, lift a gallon of milk, and at the time of the hearing [she] testified that she was trying to get a job with Walmart as an order puller – shopping for other people. She drives every day and worked only two months prior to the hearing. Importantly, she was terminated, not because of an inability to do the job physically but because her money drawer was short.

(AR 21–23.)

### C. *Whether the ALJ Gave Good Reasons*

As set forth above, the agency's regulations required the ALJ to give "good reasons" for discounting a treating physician's opinion, and these reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR 96–

2p, 1996 WL 374188, at *5 (July 2, 1996)). The regulations require consideration of several specific factors, including the length of the treatment relationship and frequency of evaluation, nature and extent of the treatment relationship, how well supported by medical evidence the treating physician's opinion is, the consistency of the treating physician's opinion with the record as a whole, and whether the treating physician is a specialist, 20 C.F.R. § 404.1527(c)(2)–(6). However, the regulations do not require the ALJ to specifically address each of these factors. Instead, they expressly require only that the ALJ's decision include "'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).

The plaintiff argues that the ALJ erred by failing to point to which specific objective medical evidence in the record was inconsistent with Dr. Bigham's opinion. She argues that the magistrate judge erred in concluding that, "when it is clear from the ALJ's opinion what the claimed inconsistencies are, the ALJ need not repeat them in the portion of the decision where a treating source opinion is specifically discussed," because the magistrate judge "failed to actually identify what those 'inconsistencies' were, simply stating the ALJ 'pointed out ma[n]y instance[s] where the objective evidence did not support a finding of disabling limitations.'" (Doc. No. 22, at 2 (quoting Doc. No. 21, at 9).) Specifically, Evans insists that (1) the ALJ's simply pointing to a series of normal examination findings does not show how those normal examinations are inconsistent with the treating source's opinion; and (2) the plaintiff's testimony that she could lift a gallon of milk does not substantiate a conclusion that she could "occasionally"—meaning up to one-third of the time under the agency's definition of the term— lift any amount of weight.

The court rejects the plaintiff's arguments. The ALJ very clearly stated that he gave little weight to Dr. Bigham's opinion, and he adequately explained why: the opinion that the plaintiff could lift no weight at all, could sit or stand for no more than fifteen minutes at a time, and could work no more than an hour a day was not supported by the objective evidence in the record and the plaintiff's own testimony regarding her daily activities, work history, and attempts to obtain work. While the ALJ did not specifically cross-reference the objective evidence in the record that contradicted Dr. Bigham's opinion, he had just noted that the claimant had requested, and Dr. Bigham provided, a note stating that she could work no more than 20 hours per week in April 2014—substantially more than one hour a day—and that she was actually working part-time just a few months before the ALJ hearing. In addition, she had been actively looking for work at the time of the hearing, which "indicates that the claimant herself believes she can work." (AR 16.) The ALJ also specifically noted that the plaintiff's job had ended, "not because of an inability to do the job physically[,] but because her money drawer was short." (AR 23.) This evidence objectively contradicts Dr. Bigham's opinion that the plaintiff could work no more than one hour a day. And the ALJ's reference, just prior to his discussion of Dr. Bigham's opinion, to normal findings during objective examinations in July and October 2014, revealing no substantial physical limitations, further substantiated his rejection of that opinion.

As the magistrate judge noted, when it is clear from the ALJ's opinion what the claimed inconsistencies are, the ALJ need not repeat them in the portion of the decision where a treating source opinion is specifically discussed. (Doc. No. 21, at 9 (citing *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917 (E.D. Tenn. 2013)).) Under the circumstances, having reviewed the record as a whole, the court finds that the ALJ's rejection of Dr. Bigham's opinion complied with the regulations and is supported by substantial evidence in the record, particularly in light of

the fact that Dr. Bigham was not the plaintiff's primary treating physician with respect to her back pain and provided no objective basis for her opinions regarding the plaintiff's physical limitations.

## V.Conclusion

For the foregoing reasons, the court will overrule plaintiff's Objections (Doc. No. 22); accept and adopt the magistrate judge's recommendations (Doc. No. 21); deny the plaintiff's Motion for Judgment on the Pleadings and Administrative Record (Doc. No. 18); and affirm the SSA's decision.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge